IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DUNG TRAN, | ) | 4:10CV3128 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| UNITED OF OMAHA LIFE | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, Dung Tran ("Tran"), is a beneficiary under a group life and accidental death and dismemberment insurance policy that the defendant, United of Omaha Life Insurance Company ("United of Omaha"), issued to Lester Electrical of Nebraska, Inc. ("Lester Electrical"). Tran's nephew, Huy Nguyen ("Nguyen"), was insured under the policy as an employee of Lester Electrical, and he named Tran as his sole beneficiary. Nguyen was killed when he drove his car around a lowered cross-arm at a railroad crossing in Lincoln, Nebraska, and was struck by a train. United of Omaha paid Tran the life insurance benefits under the policy but denied coverage for accidental death benefits. The denial was based on a determination that Nguyen was driving while intoxicated and under the influence of controlled drugs.

Tran appealed the claim denial in accordance with the procedure specified in the policy, but when that was unsuccessful he brought suit against United of Omaha in the County Court of Lancaster County, Nebraska. The action was removed to this court on the basis of federal question jurisdiction. There is no dispute that the group insurance policy was an employee benefit plan governed by the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., and therefore the action effectively is brought under 29 U.S.C. § 1132(a)(1)(B) (providing that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan[.]").

The matter is submitted to the court on cross-motions for summary judgment based solely on evidence contained in the administrative record that was developed by United of Omaha (filing 15, hereinafter designated as "AR").[1]  Although lacking an index and not authenticated, the administrative record appears to include a copy of the insurance policy (AR at 1-69), written correspondence (AR at 70-76, 78, 80-87, 89-91, 93, 110), notes (AR at 88, 92, 111), Tran's claim for benefits (AR at 94-97), Nguyen's application for insurance (AR at 98-99), a motor vehicle accident report (AR at 100-101), an autopsy report with attached forensic toxicology report (AR at 102-108), a death certificate (AR at 109), and internal emails (AR 77, 79, 112-114).

The evidence indicates that Lester Electrical is the plan administrator, but that United of Omaha has discretionary authority to construe the terms of the insurance policy and to determine eligibility for benefits.  Thus, the summary plan description states:

> By purchasing this Policy, the policyholder [Lester Electrical] grants us [United of Omaha] the discretion and the final authority to construe and interpret the Policy.  This means that we have the authority to decide all questions of eligibility and all questions regarding the amount and payment of any Policy benefits within the terms of the policy as interpreted by us. . . . Our interpretation of the Policy as to the amount of benefits and eligibility shall be binding and conclusive on all persons.

(AR at 67.)

The parties are in agreement that the foregoing provision requires the court to apply a deferential abuse-of-discretion standard in reviewing United of Omaha's decision to deny Tran's claim for accidental death benefits.  *See McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 792 (8th Cir. 2003) ("In reviewing the denial of ERISA

---

[1]  The court's progression order specified that any motion to expand the record or to conduct discovery was required to be filed by October 7, 2010.  No such motion was filed.

-2-

benefits, the reviewing court applies a deferential abuse-of-discretion standard if the plan 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'") (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *Parkman v. Prudential Ins. Co. of America*, 439 F.3d 767, 772 (8th Cir. 2006) ("A plan gives the administrator or fiduciary discretionary authority if it contains explicit discretion-granting language."). Under this standard, the court may only reverse a decision to deny ERISA benefits if the decision is "arbitrary and capricious." *Jackson v. Prudential Ins. Co. of America,* 530 F.3d 696, 701 (8th Cir.2008). When a plan administrator or fiduciary "offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." *Id.* (quoting *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir.2007)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ratliff,* 489 F.3d at 346 (quoting *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004)). The discretionary decision of a plan administrator or fiduciary "is not unreasonable merely because a 'different, reasonable interpretation could have been made.'" *Id.* at 348 (quoting *Parkman*, 439 F.3d at 773)).  However, when an insurer both evaluates claims for ERISA benefits and pays granted claims, a conflict of interest exists which may be relevant in determining whether the insurer abused its discretion in denying a claim.  *See Jones v. Unum Provident Corp.*, 596 F.3d 433, 438 (8th Cir. 2010); *Chronister v. Unum Life Ins. Co. of America*, 563 F.3d 773, 775 (8th Cir. 2009); *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112-15 (2008).

According to the motor vehicle accident report prepared by the investigating officer from the Lincoln Police Department, the car-train collision occurred at 5:56 a.m. on November 11, 2009.  Witnesses stated that Nguyen drove his car around another vehicle which was stopped at the railroad crossing and then proceeded into the crossing at between five to ten miles per hour. The cross-arms and flashing red warning lights at the crossing were activated and working, and the approaching Amtrak train was blowing its whistle.  Nguyen was pronounced dead at the scene. (AR at 100-01.)

An autopsy performed at the Douglas County Morgue [2] on November 20, 2009, determined that Nguyen died from severe blunt trauma, with severe head and internal injuries.  (AR at 102-03.)  Attached to the autopsy report is a forensic toxicology report prepared by Creighton Medical Laboratories on November 24, 2009, which indicates that specimens received from the autopsy included "urine, scant blood, cavity fluid, vitreous humor."  (AR at 104.)  The forensic toxicology report states without any elaboration that Nguyen's blood ethanol level was "0.088g/100mL" and that "[c]annabinoids and alcohol were detected in the urine."  (AR at 104.)

Tran completed a proof of death form and application for accidental death benefits on November 20, 2009.  (AR at 94-97.)  On January 11, 2010, United of Omaha wrote Tran to advise that while his claim for life insurance benefits was approved, his claim for accidental death benefits was disallowed.  The explanation provided in the letter was as follows:

> The Exceptions of the Accidental Death provisions state that "We will not pay for any loss which: (g) is caused by You, and is the result of injuries You receive, while under the influence of a Controlled Drug, unless administered on the advice of a Physician;" ... (h) is caused by You, and is a result of injuries You receive, while Intoxicated." Controlled Drug is defined as any drug having the capacity to affect behavior and regulated by law with regard to possession and use. Intoxicated is defined as your blood alcohol level at death or dismemberment that equals or exceeds the legal limit for operating a motor vehicle in the jurisdiction in which the loss occurs.

> We have received and reviewed the death certificate, the State of Nebraska Investigator's Motor Vehicle Accident Report and the Autopsy Report and Forensic Toxicology Report from the Coroner's office.  The Accident Report indicates that your nephew was seen driving around the crossing guard at the train tracks.  Witnesses reported

---

[2] Although the autopsy was performed Douglas County, it was authorized by the Lancaster County Attorney.

> that he ignored the flashing warning lights and train whistle. The
> Toxicology Report states that your nephew's blood alcohol content at
> the time of his death was 0.0880%. The legal limit for operating a motor
> vehicle in the state of Nebraska is 0.08%. The report also indicates that
> your brother [sic] tested positive for cannabinoids (marijuana) at the
> time of his death.
>
> Therefore, after a review of the information received, it has been
> determined that your nephew caused the accident, while Intoxicated and
> while under the influence of a Controlled Drug, and the Accidental
> Death benefit under this policy must be denied.

(AR at 89.)  The letter also advised Tran, among other things, that "[i]n the event you
wish to appeal this denial, you have the right to request a review by the Group Life
Claims Department.  The request for an appeal must be submitted within 180 days
from receipt of this notice." [3]  (AR at 89.)

On January 18, 2010, Tran, through his attorney, notified United of Omaha
that he was appealing the denial.  Tran's attorney pointed out that the presence of
cannabinoids in Nguyen's urine did not establish that he was "under the influence"
of a controlled drug at the time of the accident.  He also argued that the blood ethanol
level was an inexact number, which could vary by as much as 0.01%, and objected
that there was no showing the "scant blood" was collected, preserved, and tested in
accordance with accepted procedures.  (AR at 80-81.)

United of Omaha acknowledge receipt of the appeal on January 28, 2010, and
provided Tran's attorney with a copy of the administrative claim file on February 1,

---

[3] Every employee benefit plan must "afford a reasonable opportunity to any
participant whose claim for benefits has been denied for a full and fair review by the
appropriate named fiduciary of the decision denying the claim." 11 U.S.C. § 1133(2).
Claimants must be provided "at least 60 days following receipt of a notification of an
adverse benefit determination within which to appeal the determination[.]" 29 C.F.R.
§ 2560.503-1(h)(i).

2010. (AR at 76, 78.)  A second letter was sent to Tran's attorney on March 1, 2010, in which United of Omaha stated:

> The information you submitted is being reviewed.   Under ERISA regulations, if we are unable to complete our review of your appeal within the first 45 days, we do have the right to a 45-day extension.[4]

---

[4] Federal regulations set forth "minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries (hereinafter referred to as claimants)." 29 C.F.R. § 2560.503-1(a).  Every employee benefit plan must "establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures)." 29 C.F.R. § 2560.503-1(b). The claims procedures for a plan will be deemed to be reasonable only if they comply with the minimum requirements set forth in the regulations. *See id.*  The minimum requirements include a provision that

> the plan administrator shall notify a claimant . . . of the plan's benefit determination on review within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances . . . require an extension of time for processing the claim. . . . In no event shall such extension exceed a period of 60 days from the end of the initial period.   The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.

29 C.F.R. § 2560.503-1(i)(1)(i).  In this case, United of Omaha's policy states:

> Once We receive a request for an appeal, We will respond within 45 days, unless additional information is requested. If additional information is requested, the following extensions apply:
> > (a) extension period: 45 days; and
> > (b) maximum number of extensions: one.
> We will have a total of 90 days to process the appeal.

(AR at 63.)

> The 45-day extension will begin on the 46th day. This is to advise you
> that we are exercising our rights to the 45-day extension, which will
> begin on March 7, 2010.[5] We will be notifying you of our determination
> as soon as our review is complete.

(AR at 75.)

It appears that United of Omaha also sent an internal email to Dr. Stuart
Schlanger on March 1, 2010, inquiring whether "a person with a blood alcohol level
of 0.88 [would] experience any physical and/or mental impairment" and requesting
him to "comment on the attorney's allegations that we may not be able to rely to [sic]
heavily on the blood alcohol test due to testing procedures as well as the standard
testing deviation." (AR at 112-13.)  The physician responded on March 15, 2010,
stating:

> 1) Blood level of 0.088 would in fact impair the ability to make
> judgements and operate safely a motor vehicle.  Legal limit that defines
> intoxication in the State of Nebraska is equal to 0.80gm/dL.  In fact level
> of alcohol from 0.06-0.10 may cause impairments in:
>> Reasoning
>> Depth Perception
>> Peripheral Vision and
>> Glare Recovery
>
> 2) I am not aware of any inadequacies of testing that is done by the state
> or it's [sic] law enforcement representatives.

(AR at 113-14.)

On April 26, 2010, Tran's attorney wrote United of Omaha to advise that since
the additional 45-day review period had expired, suit would be filed unless United of

_____

[5] March 7, 2010, was 45 days after January 21, 2010, the date United of Omaha
presumably received the January 18th letter from Tran's attorney. Forty-five days
after March 7, 2010, was April 21, 2010.

Omaha agreed to pay the accidental death benefit by May 7, 2010. (AR at 70.) It appears that Dr. Schlanger responded to a supplemental request for information on April 28, 2010, by stating in another internal email:

> Issue of accuracy of lab testing and reporting of Measured Alcohol (ETOH) levels.
>
> Most standard lab analysis using an automatic machine have 'variances' of 0.001.
>
> To further explain using this case as an example, reported ETOH level of: 0.088 could be as high as 0.088 + 0.001 = 0.089 or as low as 0.088 - 0.001 = 0.087.
>
> Ranges larger than this would not be expected in today's laboratory units.

(AR at 113.) United of Omaha incorporated this additional information into a final denial letter that it sent to Tran's attorney on April 29, 2010 (eight days after the expiration of the maximum period of 90 days allowed by the insurance policy for processing the appeal). It stated:

> The certified death certificate lists the immediate cause of Huy The Nguyen's death as severe blunt trauma of head and internal injuries and the manner of death as accident. The "describe how injury occurred" indicates "deceased drove vehicle around active railroad crossing gates and was struck by train". According to the Motor Vehicle Accident Report, Huy The Nguyen drove around the crossing arm and was struck by the Amtrak train. This report indicates that witnesses said the cross arms, flashing red warning lights and train whistle were all activated and working at the time of this incident. The forensic toxicology report indicates "cannabinoids and alcohol were detected in the urine." Although, we do agree that the policy exception of being under the influence of a controlled drug does not apply to this claim, the toxicology report does indicate that Huy The Nguyen's Blood Ethanol Level was 0.088g/100mL. The legal limit for operating a motor vehicle in the state of Nebraska is 0.08%. There is nothing unusual about the

way the test was performed and most standard lab analysis could have variances of 0.001, but any variance larger than this would not be expected. A person with a blood alcohol level of .088 would have impaired ability to make judgments and operate a motor vehicle safely. Mr. Nguyen demonstrated impaired judgment when he proceeded slowly into the path of an oncoming train completely disregarding the railroad cross arms which were in the down position, the flashing red warning lights and the blowing train whistle. Serious injury or death cannot be considered an unexpected event under these circumstances.

In summary, the information in file supports that Huy The Nguyen's death was not an accident as defined by the policy[6] and Mr. Nguyen's death was caused by him while he was intoxicated. Therefore, according to the policy exceptions, he was not eligible for accidental death benefits. As a result, we are unable to overturn our previous decision and your appeal for accidental death benefits has been denied.

(AR at 73-74.)

In the brief filed in support of its motion for summary judgment, United of Omaha has failed to argue that Nguyen's death was not an accident. Consequently, I consider this policy defense waived.[7] *See* NECivR 7.0.1(a)(1)(A) ("The brief must concisely state the reasons for the motion and cite to supporting authority. A party's failure to brief an issue raised in a motion may be considered a waiver of that issue."); NECivR 56.1 ("[T]he procedures of Nebraska Civil Rule 7.0.1 apply to summary

---

[6] The policy defines "accident" to mean "a sudden, unexpected and unintended event, independent of sickness and all other causes." (AR at 55.)

[7] In addition, United of Omaha did not raise this policy defense in its initial denial letter. Because the final denial letter was not issued in a timely manner, United of Omaha should be limited to defending its decision based on the explanation that was provided in the initial denial letter. *See Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998) ("We will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation.").

judgment motions.").  Also, United of Omaha conceded in its final denial letter that the policy exception for being under the influence of a controlled drug is inapplicable, and it has acknowledged this concession in the brief filed in opposition to Tran's motion for summary judgment.  In defending this action, therefore, United of Omaha is relying solely upon the intoxication exception, which reads as follows:

> We will not pay for any loss which:
>
> . . .
>
> (h)     is caused by You, and is a result of injuries You receive, while Intoxicated;
>
>          Note:  Intoxicated means Your blood alcohol level at death or dismemberment equals or exceeds the legal limit for operating a motor vehicle in the jurisdiction in which the loss occurs;

(AR at 57.)

Nebraska law provides that "[i]t shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle . . . [w]hen such person has a concentration of eight-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood[.]"  Neb. Rev. St. § 60-6,196(1)(b).  A blood alcohol test is not admissible evidence in a criminal prosecution unless a proper foundation has been laid to prove that the test was performed in accordance with all statutory and regulatory requirements, *see State v. West*, 350 N.W.2d 512, 520-21 (Neb. 1984), but an ERISA plan administrator or fiduciary "is not a court of law and is not bound by the rules of evidence." *Cusson v. Liberty Life Assur. Co. of Boston*, 592 F.3d 215, 226 (1st Cir. 2010); *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 622 n. 4 (7th Cir. 2008).

United of Omaha's initial denial letter indicates that the forensic toxicology report was received from the coroner's office.  Nebraska law requires that "[i]n the

case of a driver who dies within four hours after being in a motor vehicle accident, . . . the coroner or other official performing the duties of coroner shall examine the body and cause such tests to be made as are necessary to determine the amount of alcohol or drugs in the body of such driver or pedestrian." Neb. Rev. Stat. § 60-6,102. "All samples and tests of body fluids under sections 60-6,101 to 60-6,103 shall be submitted to and performed by an individual possessing a valid permit issued by the Department of Health and Human Services for such purpose. Such tests shall be performed according to methods approved by the department. Such individual shall promptly perform such analysis and report the results thereof to the official submitting the sample." Neb. Rev. Stat. § 60-6,104. Regulations adopted by the Department of Health and Human Services provide only for the testing of blood (not urine or other bodily fluids) in the case of a driver who is killed in a motor vehicle accident. *See* 177 Neb. Admin. Code, Ch. 1, § 013.02. Blood specimens must be collected in clean, stoppered containers or tubes and treated with an anticoagulant and preservative substance, and must be tested by a Class A permit holder using an approved laboratory method. *See* 177 Neb. Admin. Code, Ch. 1, §§ 001.08A, 005.02, 013.01. Although it is not known whether these procedures were followed in this case, I conclude that the forensic toxicology report constitutes substantial evidence in support of United of Omaha's determination that Nguyen was intoxicated.

Tran speculates that the "scant blood" collected during the autopsy would not have been a sufficient amount for testing, and that Creighton Medical Laboratories therefore must have tested the urine specimen instead. The forensic toxicology report notes, in fact, that alcohol was detected in the urine. Tran argues that "it is likely that no blood was actually tested and the 'blood ethanol level' reported is really a urine ethanol level, or possibly a calculated "blood alcohol" result based on an unidentified urine-to-blood conversion factor. (See, SIDNEY KANE, PH.D., *The Collection and Handling of the Blood Alcohol Specimens,* AMERICAN JOURNAL OF CLINICAL PATHOLOGY, Vol. 74, No. 5, (November 1980) (reporting urine alcohol results are 20% to 30% higher than blood alcohol results, and calculated blood alcohol results from urine alcohol testing are obviously improper)." (Filing 25, at 4.)

-11-

Tran also suggests that if blood was tested, and "[i]f this scant blood specimen was not preserved or treated with an anticoagulant, then the test performed would not have been on a whole blood sample, but on a sample of serum – a fraction of whole blood. Thus, any reported result would reflect the level of alcohol concentrated in the liquid fraction of coagulated blood, and be higher than the actual alcohol concentration in whole blood." (Filing 25, at 4.)  He further states that "[a]ttempts to convert a blood serum or plasma alcohol result to a whole blood alcohol result are an approximation at best. It is reported that a mean conversion factor for blood serum to whole blood is 1.16 – meaning the blood serum or plasma alcohol result is 16% higher than the likely whole blood alcohol result. (See EDWARD F. FITZGERALD, INTOXICATION TEST EVIDENCE, § 18.5 (2d ed. 2010))  It is not unusual to see actual variances measured between 12% and 20%. (Id.)" (Filing 21, at 12.)

Finally, Tran criticizes Dr. Schlanger's opinion regarding the accuracy of laboratory testing using an automated machine.  Tran notes that Dr. Schlanger is an internist who has no apparent expertise in the field of forensic toxicology, that he mistakenly thought the lab testing was "done by the state" rather than by a hospital, and that he made assumptions regarding the testing method.[8]  Additionally, Tran states that "automated testing systems are more suitable for clinical laboratories (labs a physician would be familiar with) but not suitable for forensic laboratories. (See EDWARD F. FITZGERALD, INTOXICATION TEST EVIDENCE, §§ 18.6 & 18.11 (2d ed. 2010))."  (Filing 21, at 9.)

Although Tran raises several legitimate questions about the reliability of the reported blood ethanol level of 0.088%, I find there is not sufficient evidence in the administrative record from which to conclude that United of Omaha abused its

---

[8] Dr. Schlanger's opinion also was not provided within the 90-day period allowed for United of Omaha's review of Tran's appeal. His opinion is not essential to the claim denial, however, since the argument made by Tran's attorney that the test result could vary by as much as 0.01% was not supported by competent evidence.

-12-

discretion by relying upon the forensic toxicology report to deny his claim.[9]  That report is presumptively correct because the coroner was required by law to "cause such tests to be made as [were] necessary to determine the amount of alcohol or drugs in the body of [Nguyen]." Neb. Rev. Stat. § 60-6,102.  "In the absence of evidence to the contrary, it may be presumed that public officers faithfully performed their official duties and that absent evidence showing misconduct or disregard of law, the regularity of official acts is presumed." *KLH Retirement Planning, Ltd. v. Okwumuo*, 642 N.W.2d 801, 805 (Neb. 2002).

Tran provided United of Omaha with no evidence that contradicts the report, nor is there anything in the report itself which suggests that proper procedures were not followed.  In these circumstances, no additional investigation was required by United of Omaha.  *See Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1200 (11th Cir. 2010) (ERISA fiduciary was entitled to rely upon toxicology tests and accuracy of screening equipment to conclude that claimant was under the influence of alcohol where he presented no evidence beyond unsubstantiated assertion of improper calibration); *Veal v. Nationwide Life Ins. Co.*, No. 5:09-cv-356/RS/MD, 2010 WL 1380170, *3 (N.D.Fla. Mar. 31, 2010) (in determining that plaintiff's decedent was intoxicated, plan administrator properly deferred to independent, objective autopsy and toxicology reports); *Cornish*, 2009 WL 3231351 at *14 (insurers were not required to investigate reliability of blood alcohol results; death certificate, autopsy

---

[9] Treatises and journal articles that are referenced by Tran in his briefs were not previously brought to the attention of United of Omaha and cannot be considered on judicial review of the claim denial.  "[I]n reviewing a denial of benefits under an employee welfare plan subject to ERISA, a court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales." *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999).  *See also Cornish v. U.S. Life Ins. Co. of City of New York*, No. 3:06CV-344-DW, 2009 WL 3231351, *13 (W.D.Ky. Sept. 30, 2009) (even on *de novo* review, court could not reopen administrative record to consider medical treatises and texts regarding blood alcohol testing).

report, toxicology report and final diagnosis of the chief medical examiner were sufficient to support denial of benefits under intoxication exclusion of ERISA plan); *Arnold ex rel. Hill v. Hartford Life Ins. Co.*, 542 F.Supp.2d 471, 480 (W.D.Va. 2008) (under substantial evidence standard, plan administrator was not required to verify any chain of custody evidence with regard to blood sample; it was entitled to rely upon information provided by state officials); *Sawyer v. Potash Corp. of Saskatchewan*, 417 F.Supp.2d 730, 741-742 (E.D.N.C. 2006) (toxicology report, standing alone, provided substantial evidence necessary to support plan administrator's determination that driver was intoxicated at time of collision); *Sorrells v. Sun Life Assur. Co. of Canada*, 85 F.Supp.2d 1221, 1233 n.20 (S.D. Ala. 2000) (ERISA fiduciary was entitled to rely upon official toxicology report in the absence of any evidence that blood test results were inaccurate or somehow compromised).

Accordingly,

IT IS ORDERED that the defendant's decision denying the plaintiff's claim for accidental death benefits is affirmed, and the plaintiff's complaint is dismissed with prejudice.  Judgment shall be entered by separate document.

January 31, 2011.                    BY THE COURT:

                                     *Richard G. Kopf*
                                     United States District Judge

---

\* This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.